**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                              )
LINWOOD A. WILLIAMS, JR.,      )
                              )
          Plaintiff,           )
                              )
          v.                   )     Civil Action No. 08-1538 (RWR)
                              )
COURT SERVICES AND OFFENDER    )
SUPERVISION AGENCY FOR D.C.    )
<u>et al.</u>,                 )
                              )
          Defendants.          )
_____)

<u>MEMORANDUM OPINION AND ORDER</u>

Pro se plaintiff Linwood A. Williams, Jr. has sued the Court
Services and Offender Supervision Agency for the District of
Columbia ("CSOSA") and three agency officials alleging sex
discrimination and retaliation under Title VII of the Civil
Rights Act of 1964.  A March 25, 2011 memorandum opinion and
order dismissed the complaint on the grounds that Williams failed
to file his complaint timely and no equitable relief from that
failure was warranted.  Williams has filed a motion for
reconsideration, arguing that additional facts show that he is
entitled to equitable relief from his failure to file timely.
The plausible inferences drawn from evidence Williams has
provided suggest that Williams has acted diligently to preserve
his claim.  His motion for reconsideration will be granted, and
the order granting the defendants' motion to dismiss will be
vacated.  However, the March 25th opinion did not address the

-2-

defendants' arguments concerning naming and serving properly the individual defendants.  Because Williams' complaint fails to state a claim against the individual defendants, the motion to dismiss will be granted as to those defendants.

BACKGROUND

The background of this case is set out fully in Williams v. Court Servs. & Offender Supervision Agency for D.C. ("CSOSA"), 772 F. Supp. 2d 186 (D.D.C. 2011).  Briefly, Williams served as a Supervisory Community Supervision Officer with CSOSA.  He alleged that after he filed complaints against the agency, the defendants retaliated against him and ultimately terminated him.  Williams appealed his termination to the Merit Systems Protection Board ("MSPB"), and an MSPB administrative judge affirmed the agency action.  The full MSPB board denied Williams' petition to reconsider the administrative judge's decision, and Williams claims to have received notice of that order on June 27, 2008. On July 28, 2008 -- the last day of the 30-day period allowed by law within which he could file a civil action -- he filed in this court an improperly formatted civil complaint and a petition to proceed in forma pauperis ("IFP"), which tolled the filing deadline until the motion was denied on August 5, 2008.  Williams filed a proper complaint on September 4, 2008[1] and paid the

---

[1] Often, Williams' filings have cited erroneously the filing date as September 5, 2008.

-3-

filing fee on September 5, 2008.  Id. at 187.  Williams named

CSOSA, along with its former director, Paul A. Quander, Jr.,

deputy associate director McKinley Rush, and branch chief William

Ashe, as defendants.  Williams served CSOSA by mail sent to the

United States Attorney General and the United States Attorney for

the District of Columbia.  He attempted to serve Quander, Rush,

and Ashe by mail sent to the address of CSOSA's main building.

The March 25th opinion and order granted the defendants'

motion to dismiss on the grounds that Williams did not timely

file his complaint and that he provided no explanation for why he

waited twenty-four days -- the time between the date on which he

was presumed to have received notice that his motion to proceed

IFP had been denied and the date on which he refiled his

complaint -- to pursue his claim.  Williams argues that

reconsideration is warranted because he has presented new

evidence that shows he was "diligent by filing the complaint

with[in] the week after learning about [the] denial of [his]

request to waive the filing fees."  (Pl.'s Mot. for

Reconsideration and to Alter or Amend J. ("Pl.'s Mot.") at 3.)

The March 25th opinion did not address the defendants' additional

arguments for dismissing the individual defendants that the

plaintiff improperly named them and in any event failed to serve

them properly.

-4-

DISCUSSION

A court may alter or amend a final judgment under Federal Rule of Civil Procedure 59(e).  Altering or amending a final judgment is discretionary, and a court need not grant a Rule 59(e) motion unless it "finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Ciralsky v. CIA, 355 F.3d 661, 671 (D.C. Cir. 2004) (quoting Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996)). Such a motion is "not routinely granted."  Williams v. Savage, 569 F. Supp. 2d 99, 108 (D.D.C. 2008).  New evidence that could justify altering or amending a final judgment does not include evidence that a party could have presented before a court entered the judgment.  See Artis v. Bernanke, 256 F.R.D. 4, 6 (D.D.C. 2009) (concluding that the plaintiffs' "recent recollections" could not be considered new evidence because "[p]laintiffs fail to explain why these statements could not have been presented when the defendant's motion to dismiss was originally pending before the Court").  However, a pro se plaintiff may file supplemental materials with a motion for reconsideration to clarify his claims.  See Greenhill v. Spellings, 482 F.3d 569, 572 (D.C. Cir. 2007); Anyanwutaku v. Moore, 151 F.3d 1053, 1054 (D.C. Cir. 1998) (permitting a pro se plaintiff to file a motion

-5-

for reconsideration with an "addendum" to the motion that

clarified the claims in the plaintiff's original complaint).

I.   TIMELINESS OF COMPLAINT

In his opposition to the defendants' motion to dismiss,

Williams claimed that he "expeditiously refiled his modified

complaint with the Court on September 5, 2008" right after

receiving notice that his motion to proceed IFP was denied.

(Pl.'s Am. Mem. of Law in Supp. of His Opp'n to Defs.' Mot. to

Dismiss ("Pl.'s Opp'n to Mot. to Dismiss") at 3.)  To support his

claim of speedy action, Williams cited a September 4, 2008 date

stamp appearing on a copy of the notice that leave to proceed IFP

was denied.  However, the date stamp did not support Williams'

receipt of notice on that date, as he had attached a copy of that

notice as an exhibit to the complaint, and the Clerk's Office

date stamped it as the first page of the attachment.  Noting that

"Williams provide[d] no other evidence of when he received actual

notice of the denial," the March 25th opinion presumed that

Williams received notice of the denial three days after the Clerk

posted the order denying leave to file.  CSOSA, 772 F. Supp. 2d

at 190 (citing Baker v. Henderson, 150 F. Supp. 2d 17, 21 n.3

(D.D.C. 2001) (noting that in the absence of evidence to the

contrary, a mailing is presumed to be received three days after

the date of mailing)).  The March 25th opinion also noted that

"Williams provide[d] no explanation for why he waited an

-6-

additional twenty-four days [after the date on which he was presumed to have received notice] to refile his complaint." Id. Williams' assertion that his repeated visits to the Clerk's Office to check on the status of his complaint demonstrated his diligence was discounted on the ground that he provided no evidence that he made any of those visits to the Clerk's Office between the date on which he was presumed to have received notice and the date on which he refiled the complaint. Id.

Williams now presents unrebutted evidence in the form of a sworn affidavit that he "became aware" that his motion to proceed IFP had been denied as a "result[] of a random call to the clerk's office approximately three to four business days before the complaint was re-filed. . . . I did not obtain a copy of Judge Leon's Notice until approximately three to four business days before I re-filed the complaint on September 4, 2008." (Pl.'s Aff. at 2.) Although this affidavit could be characterized as evidence that Williams could have presented when the defendants' motion to dismiss was pending, Williams is entitled to some latitude as a pro se plaintiff, and the affidavit will be construed instead as supplemental evidence that clarifies his claims. See Anyanwutaku, 151 F.3d at 1054. Crediting Williams' affidavit as new evidence also is appropriate in light of the March 25th opinion's reliance on the absence of evidence regarding when Williams received notice that his motion

-7-

for leave to proceed IFP had been denied and the lack of
explanation from Williams about why he waited until September 4
to refile his complaint.

The defendants argue that Williams' affidavit asserting that
he first learned only three or four business days before
September 4, 2008 that his IFP motion was denied is inconsistent
with the factual assertions he made in his opposition to the
defendants' motion to dismiss, in which he argued that he refiled
his complaint "the very next day" after receiving notice that his
motion for leave to proceed IFP was denied.  (Defs.' Mem. of P. &
A. in Opp'n to Pl.'s Mot. for Reconsideration ("Defs.' Mem.") at
4 (citing Pl.'s Opp'n to Mot. to Dismiss at 5).)  A court need
not credit an account presented in a motion for reconsideration
that plainly contradicts an account previously presented to the
court.  See Artis, 256 F.R.D. at 6 ("Plaintiffs fail to explain
. . . why the Court should rely on these more recent
recollections [presented in a motion for reconsideration],
particularly when they contradict other evidence already in the
record.")

Williams' potentially inconsistent statements do raise a
concern.  What he said on page 3 of his opposition to the
defendants' motion to dismiss was that he filed for a "waiver of
the filing fee . . . which was endorsed by the Honorable Judge
Leon on August 5, 2008, and denied by this Court on September 4,

-8-

2008. . . .  Upon receiving the motion that was denied by this Court, Plaintiff expeditiously refiled his modified complaint with the Court on September 5, 2008[.]"  He added on page 5: "On July 28, 2008, and September 5, 2008, i.e., the thirty-first and the very next day; respectfully, after this Honorable Court denied the Leave for Filing."  (Pl.'s Opp'n to Mot. to Dismiss at 3, 5.)

From those representations, the most the March 25th opinion could say was that "Williams implies that he received notice of the August 5, 2008 denial on September 4, 2008" (emphasis added). CSOSA, 772 F. Supp. 2d at 190.  Indeed, he had never explicitly said he received notice on September 4, 2008.  The inference drawn by the March 25th opinion, albeit not unreasonable, stemmed from the syntactical imprecision of Williams' filing which should not be held against him or produce a litigation-ending result. Thus, Williams' account here does not plainly contradict the account he presented in opposition to the defendants' motion to dismiss.  The unrebutted affidavit Williams has presented will be accorded a presumption of regularity, and it warrants setting aside the presumption that Williams received within three days of its mailing notice of the denial of his leave to proceed IFP.

Williams argues that this new evidence shows that he pursued his claim diligently because he used the intervening time "to be sure there were no formatting issues and that all necessary paper

-9-

work was filed in the complaint."  (Pl.'s Mot. at 2-3.)

Equitable tolling is appropriate where a plaintiff can

demonstrate that he acted diligently to preserve his claim.  See

Koch v. Donaldson, 260 F. Supp. 2d 86, 90 (D.D.C. 2003).  In

Baker, 150 F. Supp. 2d at 20, a pro se plaintiff filed with the

Clerk's Office a motion to proceed IFP seven days before her

ninety-day filing period expired.  The court denied the

plaintiff's motion three months later but misplaced the file and

did not send her notice of the denial.  One month later, the

plaintiff visited the courthouse to ask about the status of her

request.  The Clerk's Office located her file and informed her

that the court had denied her request.  The plaintiff paid the

filing fee and filed her complaint seven days after receiving

notice from the Clerk's Office.  Under those circumstances, the

court equitably tolled the filing deadline on the ground that the

plaintiff had diligently pressed the action.  Id. at 22.  Just as

in Baker, Williams learned that his motion for leave to proceed

IFP was denied not by receiving notice of the order in the mail

but by contacting -- on his own accord -- the Clerk's Office to

check on the status of his motion.  Since Williams refiled his

complaint within three or four days of receiving notice -- half

the time it took the plaintiff in Baker to file her complaint --

he diligently pursued his claim.

-10-

The defendants attempt to distinguish <u>Baker</u> on the ground that the plaintiff there had filed her motion for leave to proceed IFP seven days before the limitations period applicable to her claim had run, and that upon learning of the denial of her motion, she filed the claim within the seven-day period that had been tolled.  (Defs.' Mem. at 6.)  However, the reason the court in <u>Baker</u> found that the plaintiff had diligently pressed her claim was not that she filed her complaint within the amount of time remaining under the tolled limitations period.  Rather, the court found filing within seven days of receiving notice of the denial to be indicative independently of the plaintiff's diligence.  Moreover, the seven remaining days of the limitations period had long run by the time the plaintiff in <u>Baker</u> learned of the denial.  Even though the remaining portion of the limitations period ran before Williams refiled his complaint, equitable tolling of the deadline is warranted.  Williams' motion for reconsideration therefore will be granted and the order of dismissal vacated.

## II.  CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS

Williams' claims against Quander, Rush, and Ashe must nonetheless be dismissed because the individual defendants are not proper parties in this appeal of a final decision from the MSPB, and because Williams is unable to state independent claims against them under either Title VII or <u>Bivens v. Six Unknown Fed. Narcotics Agents</u>, 403 U.S. 388 (1971).  Where, as here, an

-11-

employee "seeks review of a final order or decision [of the MSPB]

on the merits on the underlying personnel action[,] . . . the

*agency* responsible for taking the personnel action shall be the

respondent."   5 U.S.C. § 7703(a)(2) (emphasis added).   Williams'

claims are therefore properly brought against CSOSA, but not a

former director, deputy associate director, or branch chief.[2]

   Williams' complaint is ambiguous as to any independent

grounds on which he seeks to hold the individual defendants

liable.   The complaint's only reference to Quander is a

---

[2] A "mixed case appeal" combining an appeal of an adverse
personnel action with a claim that discrimination motivated the
action is subject to the provision that the "case of
discrimination" be "filed under" 42 U.S.C. § 2000e–16(c) (Title
VII).   5 U.S.C. § 7703(b)(2).   Title VII's requirement that
actions be brought against the head of the agency is in apparent
conflict with § 7703(a)(2)'s requirement that appeals of MSPB
decisions be brought against the agency itself.   With respect to
§ 7702(e)(1), which governs mixed case appeals in district court
in situations where the MSPB has failed to render a decision, the
D.C. Circuit held that the provision's instruction that "an
employee shall be entitled to file a civil action *to the same
extent and in the same manner* as provided in section 717(c) of
the Civil Rights Act of 1964 (42 U.S.C. 2000e-16(c))," 5 U.S.C.
§ 7702(e)(1) (emphasis added), imports the procedural
requirements of Title VII actions, including the requirement that
the head of the agency be named the defendant.   Ikossi v.
Department of Navy, 516 F.3d 1037, 1041 (D.C. Cir. 2008).
Williams' suit, however, is an appeal of an MSPB decision under
§ 7703, and it is unclear to what extent he is obliged to follow
the procedural rules of Title VII rather those specific to review
of a final MSPB decision.   In view of this ambiguity and of
Williams' pro se status, his complaint is deemed properly filed
against CSOSA, rather than its head.   See, e.g., Tesh v. U.S.
Postal Service, 215 F. Supp. 2d 1220, 1229 (N.D. Okla. 2002)
(applying, in mixed case appeal "the clear language of
§ 7703(a)(2), which permits Plaintiff's claim for review of
MSPB's final order . . . to be brought against the agency
responsible for taking the personnel actions at issue").

-12-

description of his testimony before Congress providing general

information about CSOSA.  (Compl. at 6.)  Quander thus is

entitled to dismissal because the complaint makes no facially

plausible allegation against him.  See Ashcroft v. Iqbal, 129 S.

Ct. 1937, 1949 (2009).  With regard to defendants Rush and Ashe,

Williams does not specify in the complaint whether he is suing

them in their individual or official capacities.  "[W]hen a

complaint fails to specify the capacity in which a government

official is sued, the 'course of proceedings' will usually

indicate the sort of liability the plaintiff seeks to impose."

Atchinson v. District of Columbia, 73 F.3d 418, 425 (D.C. Cir.

1996) (quoting Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985)

(internal quotations omitted)).  In his opposition to the

defendants' motion to dismiss, Williams stated that "[t]o the

extent, [sic] Plaintiff is proceeding against defendants in their

official capacity and timely, the complaint must be upheld and a

dismissal of Defendant's motion entirely [sic]."  (Pl.'s Opp'n to

Mot. to Dismiss at 6.)  But he also argues that the individual

defendants "violated the Plaintiff's constitutional rights by

operating *beyond* their official capacities," for example by

allegedly forcing him to work unpaid overtime and limiting his

freedom of movement in public buildings.  (Id. at 8 (emphasis

added).)

      However, even affording Williams the leniency to which he is

-13-

entitled as a pro se plaintiff, see Howerton v. Ogletree, 466 F.

Supp. 2d 182, 183 (D.D.C. 2006), no cause of action against Ashe

and Rush, in either their individual or their official

capacities, is discernable on the record presented.  The

complaint alleges that Ashe and Rush took discriminatory and

retaliatory action against Williams as his supervisors.  Williams

alleged that Ashe "assign[ed] job responsibilities based on

gender" (Compl. at 11), and that females supervised by Rush

"received preferential treatment" (id. at 13).  He further

alleged that both Ashe and Rush "retaliated against [him] by

falsifying documents, exaggerating automation issues through non-

disclosures, not being forthcoming with [his] actual performances

and; essentially setting [him] up for termination[.]"  (Id. at

15.)  "[W]hile a supervisory employee may be joined as a party

defendant in a Title VII action, that employee must be viewed as

being sued in his capacity as the agent of the employer, who is

alone liable for a violation of Title VII."  Gary v. Long, 59 F.

3d 1391, 1399 (D.C. Cir. 1995); see also Murray v. Gilmore, 406

F.3d 708, 716 (D.C. Cir. 2005) ("[O]ur case law clearly precludes

a [Title VII] suit against [an employer] individually.").

Williams' suit must thus be construed as against the individual

defendants in their official capacities and "essentially merges,"

Gary, 59 F.3d at 1399, with his claim against CSOSA.  Dismissing

the individual defendants in this case is permitted in order to

-14-

preserve judicial resources and avoid redundancy.  See, e.g.,

Howard v. Fenty, 580 F. Supp. 2d 86, 92 (D.D.C. 2008); Jenkins v.

Jackson, 538 F. Supp. 2d 31, 34 (D.D.C. 2008).

Although Williams' complaint does not clearly allege Bivens

claims against the individual defendants in their individual

capacities, Williams argued in briefing that Ashe, Rush, and

Quander "violated [his] constitutional rights by operating beyond

their official capacities."  (Pl.'s Opp'n to Mot. to Dismiss at

8.)  "It is axiomatic that a complaint may not be amended by the

briefs in opposition to a motion to dismiss."  Arbitraje Casa de

Cambio, S.A. de C.V. v. U.S. Postal Service, 297 F. Supp. 2d 165,

170 (D.D.C. 2003) (citing Coleman v. Pension Benefit Guar. Corp.,

94 F. Supp. 2d 18, 24 n.8 (D.D.C. 2000)).  Moreover, even if the

complaint could be construed to assert constitutional claims

under Bivens, those claims must fail.  Williams' factual

allegations against the individual defendants are confined to

claims that they discriminated and retaliated against him.

(Compl. at 11, 13, 15.)  Title VII "provides the exclusive

judicial remedy for claims of discrimination in federal

employment."  Brown v. Gen. Serv. Admin., 425 U.S. 820, 835

(1976).  Because discrimination and retaliation are actionable

under Title VII's comprehensive remedial scheme, no Bivens remedy

may be implied for claims that the same discrimination and

retaliation violated constitutional rights.  See Ethnic Employees

of Library of Congress v. Boorstin, 751 F.2d 1405, 1415 (D.C.

-15-

Cir. 1985) ("[T]his circuit has repeatedly held that federal

employees may not bring suit under the Constitution for

employment discrimination that is actionable under Title VII.");

Kittner v. Gates, 708 F. Supp. 2d 47, 54 (D.D.C. 2010)

(dismissing Bivens count where "Plaintiff's constitutional claims

. . . clearly do challenge the same acts of harassment,

discrimination, and retaliation . . . for which Title VII

provides the exclusive remedy").  Constitutional claims are

preempted even if, as Williams argued, the individual defendants

"operat[ed] beyond their official capacities."  (Pl.'s Opp'n to

Mot. to Dismiss at 8.)  See, e.g., Kittner v. Gates, 783 F. Supp.

2d 170, 174 (D.D.C. 2011) ("[E]ven assuming that Plaintiff is

correct that Defendants' actions exceeded the scope of their

employment, Title VII preemption would still be applicable as

long as Plaintiff's constitutional claims are ones that are

actionable under Title VII and for which Title VII provides a

remedy.").[3]

---

[3] In addition, in an individual capacity suit, defendants
Quander, Rush, and Ashe would be entitled to dismissal because
Williams did not properly serve them.  Fed. R. Civ. P. 12(b)(5).
Rule 4(e)(2) requires that service upon defendants sued in their
individual capacities be effected either personally, by leaving
the complaint and summons at the dwelling or usual place of
abode, or by delivery to an agent lawfully authorized to receive
service.  Fed. R. Civ. P. 4(e)(2).  Rule 4(e)(1), permitting
service pursuant to the laws of the District of Columbia, imposes
the same requirements.  Fed. R. Civ. P. 4(e)(1); D.C. Super. Ct.
Civ. R. 4(i)(2)(B).  Federal Rule 4(c)(2) further requires that a
"person who is . . . not a party" effect service.  Fed. R. Civ.
P. 4(c)(2).  Williams concedes that he attempted to serve the
individual defendants by sending the complaint and summons by

-16-

<u>CONCLUSION AND ORDER</u>

Williams has presented evidence that, when accorded the benefit of the doubt, shows that he diligently pursued his claims and that equitably tolling the filing deadline is warranted. Williams, however, has not stated claims against the individual defendants.  Accordingly, Williams' motion for reconsideration will be granted and the March 25, 2011 order granting the defendants' motion to dismiss will be vacated.  The motion to dismiss will be granted with respect to defendants Quander, Rush, and Ashe only.  Thus, it is hereby

ORDERED that the plaintiff's motion [19] for reconsideration be, and hereby is, GRANTED.  It is further

ORDERED that the March 25, 2011 order granting the defendants' motion to dismiss be, and hereby is, VACATED.  It is further

ORDERED that the defendants' motion [7] to dismiss be, and hereby is, GRANTED in part as to defendants Quander, Rush, and Ashe only.  It is further

---

certified mail to CSOSA's main building.  (Pl.'s Opp'n to Mot. to Dismiss at 5-6.)  Williams mailing process to the individual defendants' workplace is not personal service, or service to a dwelling or abode or an authorized agent, by a non-party.  <u>See, e.g.,</u> <u>Reading v. United States</u>, 506 F. Supp. 2d 13, 19 (D.D.C. 2007) (finding "no authority . . . for the proposition that Congress ever contemplated carving a loophole into the procedural rules to permit a plaintiff to serve a defendant by indirectly effectuating service through the postal service").  Because Williams' attempted service was deficient, the court lacks personal jurisdiction over the individual defendants.

-17-

ORDERED that the parties confer and file by February 8, 2012 a joint status report and proposed order proposing a schedule on which the case should proceed.

SIGNED this 9th day of January, 2012.

_____/s/_____
RICHARD W. ROBERTS
United States District Judge
