## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| LINWOOD WILLIAMS, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 08-cv-1538 (RCL) |
| | ) | |
| COURT SERVICES AND OFFENDER | ) | |
| SUPERVISION AGENCY FOR D.C., | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION

In this case, plaintiff, Linwood Williams, Jr., proceeding *pro se*, alleges "discrimination, retaliation and other claims" against his former employer, the Court Services and Offender Supervision Agency for D.C. Compl. 2. This matter is before the Court on defendant's motion for judgment on the pleadings or for summary judgment. ECF No. 123.

### I.    SUFFICIENCY OF PLAINTIFF'S SUBMISSIONS

At the outset, the Court confronts serious deficiencies in Mr. Williams' submissions in this case. In determining the undisputed facts for the purposes of reviewing a motion for summary judgment, this Court adheres to the text of Local Civil Rule 7(h). As such, in resolving the present summary judgment motion, this Court "assume[s] the facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." LCvR 7(h).

The Court previously warned Mr. Williams that pursuant to Local Rule 7(h) he is required to submit *concise* factual statements including references to parts of the record relied upon to support the statements. *See* April 24, 2015 Order, ECF No. 138. The Court warned that the Rule

"places the burden on the parties and their counsel, who are most familiar with the litigation and the record, to crystallize for the district court the material facts and relevant portions of the record." *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 151 (D.C. Cir. 1996) (quoting *Twist v. Meese*, 854 F.2d 1421, 1425 (D.C. Cir. 1988)) (discussing Rule 7(h)'s predecessor), and that "a district court should not be obliged to sift through hundreds of pages of depositions, affidavits, and other interrogatories in order to make [its] own analysis and determination of what may, or may not, be a genuine issue of material fact." *Id.* at 151 (quoting *Twist*, 854 F.2d at 1425). Where a party has failed to file a proper Rule 7(h) statement, he "'may not be heard to complain that the district court has abused its discretion by failing to compensate for [his] inadequate effort.'" *Id.* (quoting *Twist*, 854 F.2d at 1425).

Mr. Williams subsequently submitted a "Renewed motion for admission of agreed upon facts," ECF No. 139 ("Pl.'s SOMF"), as well as "Renewed responses to defendant's statement of undisputed facts," ECF No. 142 ("Pl.'s Renewed Responses"), a combined 86 pages of factual assertions. While these statements demonstrate an attempt to comply with the local rules, they are so deficient as to impede effective review by this Court.

Both of Mr. Williams' statements violate the Local Rule because, at 86 pages, they are certainly not "*concise* statement[s] of genuine issues setting forth all material facts." LCvR 7(h). His statements are replete with argument, speculation, conjecture, and assumptions. The alleged facts are largely "not material to [his] substantive claims," *Jackson*, 101 F. 3d at 153, or merely "describ[e] in lengthy detail the contextual and structural background surrounding Defendant's stated facts." *Gibson v. Office of Architect of The Capitol*, No. 00-2424, 2002 WL 32713321, at *1 n.1 (D.D.C. Nov. 19, 2002) (quotation marks omitted). Those facts that *are* potentially relevant to his claims lack appropriate "references to parts of the record relied on to support the statement."

LCvR 7(h). *See, e.g.*, Pl.'s SOMF ¶ 70 (asserting that CSOSA admitted that seven female SCSOs violated the same or greater performance standards as did Mr. Williams without consequence, and citing *30* documents that do not support this statement, including the letter proposing his removal, his position description, and a phone directory); *id.* ¶ 72 (asserting that Mr. Williams was given less time to do his work than his peers and citing the same 30 sources plus two more, none of which seem to support this statement); *id.* ¶¶ 117-19 (asserting that Mr. Rush informed several of Mr. Williams' superiors of his protected activity, but citing excerpts of two depositions that make no mention of this). Although Mr. Williams asserts partial disagreement with many of CSOSA's alleged facts, he often fails to provide the basis for his disagreement. *See, e.g.*, Pl.'s Renewed Responses ¶¶ 24-32, ¶¶ 34-42 (each stating only "Agree in part and disagree in practice" without any explanation, followed by numerous citations that generally seem irrelevant to CSOSA's assertion).

The Court has considered the matter, and in an exercise of its discretion, rules that Mr. Williams' renewed motion for admission of agreed upon facts and renewed responses to defendant's statement of undisputed facts will be stricken and therefore not considered. Accordingly, the Court will treat CSOSA's statement of undisputed fact as conceded. Thus, in most instances, the Court cites to CSOSA's Statement of Material Facts (Def.'s SOMF).

The Court believes this action is appropriate, notwithstanding Mr. Williams' status as a *pro se* litigant. It is simply not possible for the Court to thoroughly analyze nearly 3,000 pages of exhibits to determine whether his statements present issues of material fact precluding summary judgment on Mr. Williams' claim. Our prior Order clearly notified Mr. Williams of the Court's requirements as well as the potential consequences should he fail to meet them. This case has been pending for seven years, during which time Mr. Williams' own conduct in litigating this lawsuit

has been called into question several times. *E.g.*, *Williams v. CSOSA*, 840 F. Supp. 2d 192, 196 (D.D.C. 2012) (reinstating case although "Williams' potentially inconsistent statements do raise a concern"); *Williams v. CSOSA*, 937 F. Supp. 2d 41, 43 (D.D.C. 2013) ("Williams' own delay in producing documents has been a serious hindrance to concluding discovery in this matter.").

Furthermore, the Court has painstakingly reviewed Mr. Williams' 93-page opposition brief, checking the record citations on every fact that could be relevant. Regrettably, his opposition suffers from the same deficiencies as his statements of fact, and also—inexplicably—includes lengthy excerpts of discovery requests. *See, e.g.*, Opp'n 9 (asserting that plaintiff has the largest number of cases, but citing the entirety of Mr. Ashe's deposition without a pin cite); Opp'n 15 (attributing several quotes to a coworker, but citing only objections to discovery requests); Opp'n 32 (asserting that another employee confirms that a special condition Mr. Williams missed was not listed on the computer database, but citing a blank document); Opp'n 80 (asserting that Mr. Williams was reprimanded for his tardy completion of an assignment, while others were not reprimanded for finishing late or had deadlines waived, but citing only an email chain regarding cases Mr. Williams failed to close appropriately); Opp'n 85 (asserting that the Associate Director stated that many women were transferred when they should have been fired, but citing only objections to discovery requests). While Mr. Williams asserts many facts that, if proven, might support his claim for relief, almost none are supported by citations to record evidence. The Court nonetheless considers his arguments, as well as asserted facts where they are supported by record evidence.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

The Court Services and Officer Supervision Agency for D.C. (CSOSA) is a federal agency responsible for supervising convicted offenders who are on parole, probation, and supervised

release for violations of the Criminal Code of the District of Columbia. (Def.'s SOMF) ¶ 1. CSOSA's mission is to increase public safety, prevent crime, reduce recidivism, and support the fair administration of justice in close collaboration with the community. *Id.* ¶ 2.

Plaintiff Linwood A. Williams, Jr., was hired by CSOSA as a Community Supervision Officer (CSO) on August 16, 1998. *Id.* ¶ 4. Mr. Williams was promoted to Supervisory Community Supervision Office (SCSO) in 2003. *Id.* ¶ 5.

From 2004-2005, Mr. Williams was issued at least two written reprimands for his poor performances, *id.* ¶¶ 15, 20. On August 24, 2005, Bill Ashe, Branch Chief of Branch IIA, gave Mr. Williams a performance appraisal plan (PAP). *Id.* ¶ 21. The PAP identified the performance standards and critical elements for Mr. Williams' position and addressed the requirements necessary to attain the Fully Met Expectations level. *Id.*

On February 10, 2006, Mr. Ashe notified Mr. Williams that because of his unacceptable performance in the critical performance competencies of "accountability" and "team building," Mr. Ashe was placing him on a Performance Improvement Plan (PIP) in accordance with Human Resources Directive 430.2, and with the PAP previously given to Mr. Williams. *Id.* ¶ 22. Mr. Ashe stated that the PIP was initiated because of Mr. Williams' poor work performance that Mr. Ashe had observed since August 2005. *Id.* ¶ 23. The PIP specifically noted numerous occasions on which Mr. Williams had been instructed on how to perform initial case review and provide CSOs with guidance. *Id.* ¶¶ 24-29. It then noted several cases that Mr. Williams had assigned without initial case reviews and without providing the CSOs with instructions for appropriate case handling. *Id.* ¶¶ 30-36. Finally, the PIP notified Mr. Williams that his work performance would be reviewed for one year from the time of the PIP notice, and if Plaintiff were to be rated unacceptable in any critical competency element or critical success factor during that time, his overall rating would be

unacceptable, and an unacceptable rating would result in his reassignment, demotion, or removal. *Id.* ¶ 37.

Mr. Williams grieved the PIP through various steps of appeal, until Adrienne Poteat, Associate Director, ruled that Bill Ashe had acted appropriately when he placed Mr. Williams on the PIP. *Id.* ¶¶ 33-41.

On April 28, 2006, Mr. Ashe told Mr. Williams that he had successfully completed the PIP based on Ashe's assessment that Williams' performance had risen to the "Fully Met Expectations" level in the "accountability" and "team building" competencies. *Id.* ¶ 44. Mr. Williams refused to sign this assessment. *Id.*

On October 10, 2006, Mr. Ashe presented Mr. Williams with his final annual performance evaluation for the period from August 1, 2005 to July 31, 2006: The final rating for that period was "Unacceptable." *Id.* at 46. Mr. Williams refused to sign this assessment. *Id.*

That same day, Mr. Ashe sent Mr. Williams a memorandum on CSOSA letterhead, entitled "Proposed Removal," based on "Unacceptable Performance." *Id.* ¶ 48. The memorandum noted that Mr. Williams' performance fell below the requisite level in two critical competencies, including "accountability," which requires that SCSOs hold themselves and others accountable for conforming to established procedures and work standards, work is normally completed on schedule, and that subordinates share a commitment to high standards for quality and timeliness. *Id.* ¶ 53. It noted that the specific expected performance level for the critical competency of "accountability" was:

> Requires statistical data submitted by deadline date, (e.g. screener, monthly statistics; CSF quarterly reports); special reports/ projects are submitted in accordance with (IAW) CSS deadlines; completes performance appraisals for subordinates IAW CSS and OHR deadlines; consistently identified and corrects performance or conduct problems IAW agency policy; effectively counsels and directs staff through weekly contact. Ensures the accuracy of data entered into the

6

database; ensures caseloads assignments are equitably distributed IAW CSS standard, performance audits and case-reviews IAW CSS standard; submits closed cases within required time frames; ensures internal and external stakeholders (e.g. the community, the Courts, US Parole Commission (USPC), and the Metropolitan (MPD) receive quality customer service; ensures Teams/Units are responsive to the need of stakeholders; ensures customer service and takes appropriate actions if needs are not being met; recognizes and rewards positive performance and team work. Open/available for employees on work-related problems and concerns in order to resolve issues at the lowest level. Demonstrates commitment to EEO and diversity principles; EEO policies, procedures and guidelines are distributed to employees and are posted IAW regulations and accurate and complete information is provided to EEO counselors and the Office of EEO. Grievances are kept to a minimum but dealt with fairly and promptly; responsive to individual and Team needs and concerns; intervenes to resolves issues at the initial stage; balances rewards and sanctions; recognizes the value of noteworthy performance through commendations, honorary awards, and cash awards, etc.

*Id.* ¶ 54.

The memorandum then noted specific deficiencies in Mr. Williams' work performance:

- Several cases Mr. Williams noted as closed on the computer database remained open. *Id.* ¶¶ 55-61.

- Mr. Williams had assigned a case to the incorrect CSO. *Id.* ¶¶ 62-64.

- In a case where the offender was placed on probation with a special condition to serve the first month of supervision in a halfway house, Mr. Williams reviewed the case and provided supervision instructions to the CSO but did not address the halfway house supervision request prior to the transfer. *Id.* ¶¶ 66-67.

- Similarly, another case was transferred without a halfway house placement matter being resolved. *Id.* ¶¶68-70.

- Mr. Williams failed to give guidance to an assigned CSO that a court had ordered an offender placed directly into a residential drug treatment program following his release from jail. *Id.* ¶¶ 71-73.

- Mr. Williams had inappropriately approved a warrant request for an offender based on a single positive drug test. *Id.* ¶¶ 74-76.

- Mr. Williams submitted a draft Proposed Removal memorandum to Ashe proposing the removal of a Community Supervision Assistant, despite being told he did not have such authority and could only *recommend* removal. *Id.* ¶¶ 77-87.

Mr. Williams provided a written response to this letter of proposed removal before he and his lawyer met with McKinley Rush, Deputy Associate Director. *Id.* ¶ 89. Mr. Rush addressed Mr.

7

Williams' arguments in his "Decision on Proposed Removal," indicating that Williams had not mitigated or refuted the specifications in the proposal to remove him. *Id.* ¶ 90. Williams was thus removed from his position effective February 20, 2007. *Id.* ¶ 91.

Mr. Williams appealed CSOSA's decision to remove him to the Merit System Protection Board (MSPB). *Id.* ¶ 107. On his appeal form, he declined to check the box indicating a whistleblower claim. *Id.* ¶ 119. The MSPB heard his appeal on July 25 and 26, 2007, and issued an Initial Decision on September 12, 2007, affirming CSOSA's decision to remove him. *Id.* ¶ 108. The MSPB administrative judge ruled that CSOSA's evidence concerning the specific examples of Mr. Williams' unsatisfactory performance cited above was sufficient to establish by substantial evidence that his performance was unacceptable as a whole in the critical "accountability" performance competency. *Id.* ¶ 88.

Williams appealed the MSPB Initial Decision, and the MSPB appeals board issued a Final Order on June 20, 2008, sustaining the administrative judge's ruling. *Id.* ¶ 109. Williams then filed suit before this Court, alleging "claims of discrimination, retaliation and other actions." Compl. 1.

## III.   JUDGMENT ON THE PLEADINGS

Rule 12(c) allows any party to "move for judgment on the pleadings" after "the pleadings are closed." Fed. R. Civ. P. 12(c). In this case, the pleadings consist of the complaint and answer. A Rule 12(c) motion, similar to a Rule 12(b)(6) motion, "should be granted only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Schuchart v. La Taberna Del Alabardero, Inc.*, 365 F.3d 33, 35 (D.C. Cir. 2004) (internal citation and quotations omitted).

The Rule 12(c) standard is substantially the same as the Rule 12(b)(6) standard. *Haynesworth v. Miller*, 820 F.2d 1245, 1246 (D.C. Cir. 1987). This Court will dismiss a complaint

if it does not contain enough factual allegations to "state a claim that relief is plausible on its face." *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is "plausible on its face" when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (internal quotations omitted). A court considering such a motion to dismiss pursuant to this rule must accept all factual allegations in the complaint as true, *Bell Atl. Corp.*, 550 U.S. at 555, and must construe all factual allegations in the light most favorable to the plaintiff, *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004) (internal citations omitted).

Accepting all facts pleaded as true, and viewing all inferences in a light most favorable to Mr. Williams, the Court finds that the complaint sets forth sufficient factual allegations to support his claim to relief. Accordingly, defendant's motion for judgment on the pleadings is denied.

## IV.   SUMMARY JUDGMENT

### A. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, a motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party opposing a motion for summary judgment "may not rest upon the mere allegation or denials of the adverse party's pleading, but . . . must set for specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Unless the opposing party points to "affirmative evidence" showing disputed material facts," the court shall enter summary judgment, if appropriate, against the adverse party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 256-67 (1986).

**B. Whistleblower Claim**

1. Legal Standard

The Whistleblower Protection Act ("WPA"), 5 U.S.C. § 2302, is designed to protect employees of federal agencies from agency reprisal for whistleblowing activity, such as disclosures of "illegal conduct, gross mismanagement, gross wasting of funds, or actions presenting substantial dangers to health and safety." *Stella v. Mineta*, 284 F.3d 135, 142 (D.C. Cir. 2002).

For this Court to have jurisdiction over Williams' whistle-blower claim, he must have exhausted it administratively. The Civil Service Reform Act (CSRA), Pub. L. No. 95-454, Stat. 1111 (codified in Title 5 of the United States Code), "provides the exclusive set of remedies for claims brought pursuant to the [Whistleblower Protection Act]." *Harris v. Bodman*, 538 F. Supp. 2d 78, 82 (D.D.C. 2008). Under the CSRA, "exhaustion of administrative remedies is a jurisdictional prerequisite to suit." *Weaver v. U.S. Info. Agency*, 87 F.3d 1429, 1433 (D.C. Cir. 1996).

Employees who believe that they are the victims of unlawful reprisal must first bring their claim to the Office of Special Counsel ("OSC"), which investigates such complaints. *Id.* at 142; *Weber v. United States*, 209 F.3d 756, 758 (D.C. Cir. 2000). If the OSC finds that the personnel action was prohibited, it must bring its findings before the MSPB; if the OSC investigation does not support the complaint, the employee retains the right to bring an MSPB action. *Stella*, 284 F.3d at 142; *Weber*, 209 F.3d at 758. The MSPB's decision can be appealed to the Federal Circuit. *Stella*, 284 F.3d at 142; *Weber*, 209 F.3d at 758.

However, if the complaint involves a mixed case, as here—that is, it alleges a combination of discriminatory conduct (such as gender discrimination) and non-discriminatory conduct (such

as the prohibited personnel action of retaliation for making a whistleblower complaint)—the plaintiff must choose between either filing a mixed case complaint with the EEOC, or filing a mixed case appeal directly with the MSPB. *Hamilton v. Geithner*, 743 F. Supp. 2d 1, 13 (D.D.C. 2010). "Under no circumstances does the WPA grant the District Court jurisdiction to entertain a whistleblower cause of action brought directly before it in the first instance." *Stella*, 284 F.3d at 142. No matter whether a plaintiff brought a whistleblower complaint as a stand-alone claim to the OSC, or whether he filed a mixed case with the EEOC or MSPB, "one of these administrative remedies must be exhausted before suit can be heard in federal court." *Hamilton*, 743 F. Supp. 2d at 13.

2. Analysis

Mr. Williams—then represented by counsel—failed to check the box on his MSPB appeal form to indicate that he was bringing a whistleblower claim.[1] Def.s' Ex. 27, MSPB Appeal Form at 7. The administrative judge handling the MSPB appeal noted that "[t]he appellant also clarified that he is not alleging as an affirmative defense that the removal action was in retaliation for any whistleblowing activity." Def.'s Ex. 22, Summary of Prehearing Telephone Conference at 5. It is clear that Mr. Williams did not exhaust a whistleblower claim before the MSPB.

Even if this were a separate claim rather than a mixed case, it does not appear that Mr. Williams ever alleged a WPA claim in his OSC complaints. Although he uses the term "whistleblower," Mr. Williams asserts that his complaints focused on FMLA and FHSA violations. Compl. 3; Def.'s Ex. 26, Williams Dep. 203:5-204:23. Regardless, Mr. Williams "squashed the

---

[1] Mr. Williams submitted as evidence a copy of the MSPB Appeal form with the whistleblower box checked. ECF No. 139, Ex. I. This appears to be—at best—a draft copy of the form that was never filed. This form was not a part of the official copy of the complete MSPB file and is devoid of any dates or a signature. In comparison, the version filed by CSOSA, ECF No. 124, Ex. 27, is complete and was received by SCOSA directly from the MSPB. It begins with a letter on Mr. Williams' former counsel's letterhead, dated March 16, 2007, stating "Attached for filing is the appeal for our client Linwood A. Williams, Jr. We have attached the original and copy of the Appeal Form." That letter bears a stamp stating "Received MSPB 2007 Mar 16 AM 10:38."

investigation" once he received the promotion he had hoped for. *Id.* 213:12-19. Although Williams also stated that he "reactivated" his OSC complaint, he provides no support for his assertion. There is no OSC dismissal in the record, nor is there evidence that Mr. Williams preserved any such claim by filing an Individual Right of Action with the MSPB within 65 days of the OSC's dismissal, as required. *Schlottman v. Perez*, 739 F.3d 21, 23 (D.C. Cir. 2014); *see* 5 C.F.R. § 1209.5(a)(1).

Because there is no evidence that Mr. Williams ever exhausted a WPA claim, and this Court may not entertain such a claim brought before it in the first instance, any WPA claims must fail.

### C. Title VII Discrimination and Retaliation Claims

Mr. Williams also alleges that he was unlawfully terminated for being male, Compl. 11, and that he was retaliated against for "participating in protected activities and being male-in-gender," Opp'n 44. Because being male cannot form the basis of a retaliation claim, the Court focuses on his alleged protected activities prior to his termination.

1. Legal Standards

A claim alleging discrimination without direct evidence is analyzed under the McDonnell Douglas burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). However, where an employer has articulated a legitimate, nondiscriminatory reason, the district court need not examine whether the plaintiff established a prima facie case of discrimination. *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008). Rather, the district court must ask: "Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or

national origin?" *Id.* (citations omitted). Because "bare allegations of discrimination are insufficient to defeat a properly supported motion for summary judgment," *Burke v. Gould*, 286 F.3d 513, 520 (D.C. Cir. 2002), a plaintiff must produce "sufficient evidence for a reasonable jury to find that the employer's asserted nondiscriminatory reason was not the actual reason and that the employer intentionally discriminated against the plaintiff on a prohibited basis." *Adeyemi v. D.C.*, 525 F.3d 1222, 1226 (D.C. Cir. 2008).

To establish his prima facie case of retaliation, a plaintiff must establish: (1) that he engaged in protected activity, (2) that the employer subjected him to a materially adverse action, and (3) that a but-for causal connection existed between the protected activity and the materially adverse action. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006); *Rochon v. Gonzales*, 438 F.3d 1211, 1219-1220 (D.C. Cir. 2006).

With respect to the third element, a plaintiff must establish that desire to retaliate against the employee for engaging in protected activity was the but-for cause of the alleged adverse action. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013). A plaintiff must provide proof that "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* Causation can be established through direct evidence, or circumstantial evidence such as "the temporal proximity between the employer's knowledge of a protected activity and the adverse employment action." *Rattigan v. Gonzales*, 503 F. Supp. 2d 56, 77 (D.D.C. 2007). If a plaintiff relies only on temporal proximity to establish causation, the plaintiff must show that "'the two events are very close in time.'" *Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012) (quoting *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007)). Moreover, temporal proximity alone does not preclude summary judgment. *Morgenstein v. Morgan Stanley DW Inc.*, 2007 WL 315090, at *5 (D.D.C. Jan. 31, 2007).

If a plaintiff establishes a prima facie case of retaliation, the *McDonnell Douglas* burden-shifting analysis generally proceeds. But, "once the defendant has proffered a legitimate, non-discriminatory reason for its actions, "the only question is whether the employee's evidence creates a material dispute on the ultimate issue of retaliation." *Jones v. Bernanke*, 557 F.3d 670, 678 (D.C. Cir. 2009). The court then decides whether a jury could infer retaliation from: (1) a plaintiff's prima facie case; (2) any evidence that a plaintiff may present to attack a defendant's stated non-retaliatory reason for the action; and (3) any further evidence of retaliation that may be available to a plaintiff. *Short v. Chertoff*, 555 F. Supp. 2d 166, 172 (D.D.C. 2008) (citing *Waterhouse v. District of Columbia*, 298 F.3d 989, 992-93 (D.C. Cir. 2002)).

When appealing a final MSPB decision, a complainant has "the right to have the facts subject to trial de novo by the reviewing court." *Butler*, 164 F.3d at 639 n.10 (citing 5 U.S.C. § 7703(c)).

2. Analysis

Mr. Williams' Title VII claims fail. CSOSA has put forth legitimate, nondiscriminatory reasons for his warnings and removal, and Mr. Williams presents no evidence that he was removed for improper reasons.

CSOSA proffers legitimate, nondiscriminatory reasons for the actions it took against Mr. Williams. As related in detail above—and as determined by the MSPB—Mr. Williams repeatedly failed to meet at least one Performance Standard, was issued several warnings, and continued to behave in a way that increased the risks inherent in his job. Mr. Williams was issued at least two written warnings for his poor work performance before being placed on a Performance Improvement Plan. His PIP detailed the expectations of his position and warned him that if he were rated unacceptable in any critical competency over the next year, his overall rating would be

unacceptable and would result in reassignment, demotion, or removal. Def.'s Ex. 12 at 5. Nonetheless, Mr. Williams' performance deteriorated further, and his removal was proposed. The removal included such errors as improperly characterizing cases as closed when they in fact remained open, assigning an offender to the wrong CSO, transferring a case without first addressing the requirement that the offender be placed in a halfway house as a condition of his probation, suggesting a warrant request for an offender under inappropriate circumstances, and more. Def.'s Ex. 18.

Mr. Williams has not shown that CSOSA's reasons for removal were pretextual or in retaliation for protected activity. In his opposition brief, Mr. Williams denies some of his alleged wrongdoing and offers various excuses for his errors. *See, e.g.*, Opp'n 23 (alleging that he did not know cases would not close due to outstanding community service obligations because of a technical glitch in the software); Opp'n 32 (alleging that he did not know about an offender's special condition because it was not properly entered in the database). However, his citations provide no support for these allegations. And, even if CSOSA misjudged the significance of Mr. Williams' performance deficiencies, that is not a basis for Title VII liability. "[T]he correctness . . . of [the] reasons offered" for his removal is irrelevant: The question is whether "the employer honestly believes in the reasons it offers." *Fischbach v. D.C. Dep't of Corrs.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (quotation marks omitted).

Mr. Williams also asserts numerous times that his caseload exceeded that of his peers— which CSOSA concedes—and therefore more errors are to be expected. However, despite his numerous assertions regarding his caseload, Mr. Williams has failed to cite any relevant evidence regarding how many cases he handled compared to other men or women. *See, e.g.*, Opp'n 9, 11, 13, 22, 69, 72, 79 (noting his higher caseload without citations supporting his assertions). That Mr.

Williams had a higher caseload than his peers cannot alone demonstrate that CSOSA's reasons for terminating him were false or that it harbored any discriminatory animus.

Furthermore, by failing to properly respond to CSOSA's statement of material fact, Mr. Williams concedes many of his performance deficiencies. Mr. Williams also *explicitly* concedes many of his errors in his opposition brief and his own deposition. He noted that he "mistakenly thought he could close cases when he could not do so," Opp'n 23, and "admitted" that when he found he could not close cases, he "should have noted on the Running Records" that he was giving the case to someone else to close. Opp'n 22-23. He also concedes that he "made a clerical mistake" of mis-assigning an offender's case in contravention of his supervisor's express directive. *Id.* at 30.

Mr. Williams has conceded that these errors are a "big deal" and a "public safety issue." L. Williams Dep. at 191-93 (Def.'s Ex. 26). These issues were significant problems that Mr. Williams concedes "could threaten public safety." Ex. 26, Williams Dep. 180:17-22. The errors, especially in the context of a public safety agency like CSOSA, raise serious risks of danger to the public. Therefore, there is no genuine issue of material fact: Mr. Williams did not produce sufficient evidence for a reasonable jury to find that the asserted nondiscriminatory reason was not the actual reason for his termination. *See Adeyemi*, 525 F.3d at 1226.

Furthermore, Mr. Williams has utterly failed to demonstrate that his employer intentionally discriminated against him on a prohibited basis. *Id.* He presents no evidence of direct discrimination and cannot show that similarly situated female employees made similar errors and were treated more favorably. *See Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Mr. Williams does assert that similarly situated females received more favorable treatment because they violated the same Performance Standards that were applied to Mr. Williams, and yet

they were not disciplined. Compl. 11; Opp'n 16. Throughout his opposition brief, he suggests that women—whether generally or specifically identified—did not receive consequences for behavior similar to his, but he fails to substantiate his claim. *See, e.g.*, Opp'n 16 (asserting that "[n]ot a single female peer of Plaintiff's was consequenced in any form for making the same, similar, collateral and/or worst [sic] mistakes" than he did, but providing no citations); Opp'n 39 (asserting that only Mr. Williams was "consequenced" when two female peers made the same error, but providing no citations); Opp'n 70 (asserting that Mr. Ashe permitted females to work overtime and flex-schedules to handle their caseloads, without citing relevant evidence). In fact, many of the categories of women he names are not similarly situated at all. *Id.* at 16 (listing as comparators, *inter alia*, Employment and Labor Relations Specialist, Director Human Resources, and Community Supervision Assistant); *Phillips v. Holladay Prop. Servs.*, 937 F. Supp. 32, 37 (D.D.C. 1996) (holding that "to be deemed 'similarly-situated,' the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it").

Mr. Williams also submits a partial excerpt of various employees' performance reviews, but the excerpt only shows that other employees were rated more highly—including men. Opp'n 55-57 (chart of employee reviews in which Gregory Harrison was rated "Exceeds Expectations"). Indeed, his claim is undercut by his own assertions that other *men* were treated more favorably. *See, e.g.*, Opp'n 17 (contrasting favorable treatment accorded to Gregory Harrison, who was responsible for supervision of an offender who committed a high-profile murder). That similarly-

situated men were treated better than he was *disproves* his theory that his removal was the result of unlawful gender animus.

Similarly, Mr. Williams cannot show that the actions taken against him were in retaliation for engaging in protected activity. He has not demonstrated that, based on evidence, there is a genuine issue of material fact as to whether retaliatory animus was *the* cause for the alleged adverse actions. *Rattigan v. Holder*, 982 F. Supp. 2d 69, 81 (D.D.C. 2013). Mr. Williams can present no evidence establishing that his protected activity was the but-for cause of any of the alleged retaliatory adverse actions. Rather, as noted above, he has admitted to several significant performance deficiencies that he acknowledged were potential public safety issues. In light of his concessions, no reasonable jury could conclude that *the* reason for his removal was retaliation for protected activity.

In short, there is a complete absence of direct or circumstantial evidence of discrimination, in the face of legitimate, nondiscriminatory reasons for Mr. Williams' dismissal. Mr. Williams is likewise unable to present evidence that his protected activity was the but-for cause for the adverse actions against him. As such, his Title VII claims will be dismissed.

### D. Hostile Work Environment

Mr. Williams also asserts that he was the subject of a hostile work environment, but he has failed to provide evidence whereby a jury could so find. A workplace is "hostile" where it is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation and internal quotation marks omitted). Courts consider "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere

offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998) (citation and internal quotation marks omitted). "[N]ot all abusive behavior, even when it is motivated by discriminatory animus, is actionable." *Stewart v. Evans*, 275 F.3d 1126, 1133 (D.C. Cir. 2002) (citation omitted). "Isolated incidents" or "offhand comments" are not actionable: The "conduct must be extreme to amount to a change in the terms and conditions of employment." *Faragher*, 524 U.S. at 788.

Mr. Williams provides no evidence that he was the subject of a hostile work environment. Remarks by his supervisors that he "ha[d] asked every day to reduce his caseload," and that he was asked "to cut the fluff," statements that have nothing to do with his gender. A reference to a female CSO as "your gal" likewise cannot affect a "change in the terms and conditions" of his employment. (Indeed, his sole citation for this comment does not support the statement.)  Nor do other stray remarks suggest discrimination against Mr. Williams, such as a comment "I know who gave me their blessings," or Mr. Ashe purportedly saying that a woman was "kinda cute, I don't know why she would do that." *See* Opp'n 64.

These "isolated incidents" or "offhand comments"—even where somewhat related to gender—do not amount to discriminatory changes in the "terms and conditions of employment." *Faragher*, 524 U.S. at 788. Mr. Williams has failed to raise an issue of material fact as to his hostile work environment claim, and it will be dismissed.

## E.  MSPB's Decision

While Mr. Williams does not expressly challenge the non-discrimination claims determined by the MSPB decision, insofar as his complaint can be construed to do so, his claim fails. Claims not involving discrimination must be affirmed unless (1) arbitrary and capricious, (2) obtained without procedures required by law, rule, or regulation having been followed, or (3)

unsupported by substantial evidence. *Hanna v. Herman*, 121 F. Supp. 2d 113, 121 (D.D.C. 2000) (citing *Hayes v. Dep't of the Navy*, 727 F.2d 1535, 1537 (Fed. Cir. 1984). The "role of the courts in this area of federal employment relations is strictly limited, and the MSPB's decision cannot be overturned if it is supported by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotations and citations omitted).

The MSPB's 51-page Initial Decision carefully and methodically evaluated the sufficiency of the performance-related bases for Mr. Williams' removal, and upheld all six bases litigated. *See generally* Def.'s Mot. S.J. Ex. 1. The Board found that Mr. Williams was appropriate;y apprised of the job requirements he had not met and had adequate opportunity to show that he had performed adequately. *Id.* 6-10, 41-43. The Board rejected Mr. Williams' claims that he was removed in retaliation for filing a grievance about the PIP on which he was placed or that his due process rights were violated. *Id.* at 46-48.

The MSPB's conclusion was supported by the large evidence before the Board. *Id.* at 4 (describing two-day MSPB hearing and Board orders thereafter leaving record open for the parties to submit still further evidence). In light of the careful consideration in the Initial Decision and the substantial evidence on which it was based, the MSPB's Final Order was likewise proper. Mr. Williams cannot show—and does not attempt to show—why the decision was arbitrary and capricious, obtained without proper procedures, or unsupported by substantial evidence.

F.  Plaintiff's Surreply

Mr. Williams has again filed—without an accompanying motion or leave of Court—what appears to be an unauthorized surreply (the first six pages of ECF No. 139). This Court previously struck a similarly unauthorized surreply filed by Mr. Williams. *See* ECF No. 111. Furthermore, as before, Mr. Williams has not provided a reason for filing a surreply. *See United States ex rel.*

*Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 238 F. Supp. 2d 20, 31 (D.D.C. 2011) (holding that surreplies are appropriate to "[a]ddress new matters raised in the [party's] Reply to which a party would be otherwise unable to respond"). Finally, CSOSA did not raise any new arguments in its Reply, but reiterated those raised in its motion and responded to those in Mr. Williams' opposition. For all of these reasons, Mr. Williams' surreply will be stricken from the record.

## V.      CONCLUSION

For the aforementioned reasons, plaintiff's surreply and statements of fact will be STRICKEN from the record, defendant's motion for judgment on the pleadings will be DENIED, defendant's motion for summary judgment will be GRANTED, and plaintiff's claims will DISMISSED.

A separate order consistent with this Opinion shall issue on this date.

Signed by Royce C. Lamberth, United States District Judge, on June 22, 2015.